ILLINOIS CENTRAL RAILROAD COMPANY *v.* FRANCES A. SEAMANS.

RAILROADS. *Death of employe. Proximate cause.*

> Where a railroad company so manages its business as to entice cattle to its track to feed upon wasted cottonseed at a place from which they cannot readily escape passing trains, and where they cannot be seen by engineers in time to prevent a collision, it will be liable for the death of a fireman caused by the derailment of his engine in running over a cow at the place.

FROM the circuit court of, second district, Yalobusha county. HON. PERRIN H. LOWREY, Judge.

Mrs. Seamans, appellee, was the plaintiff in the court below; the railroad company was defendant there. The suit was for the wrongful death of plaintiff's son, a fireman in defendant's employ, who was killed at Hudsonville, Marshall county, in February, 1900, by the overturning of his engine. The plaintiff was decedent's only parent; she recovered a judgment for $6,000 in the court below and the railroad company appealed to the supreme court.

There was controversy touching the facts, but as found by the jury the case was substantially as follows:

The railroad company had constructed a house for the reception of cottonseed in a deep cut several hundred feet in length through which its main track and a side track passed. The house had but one door or opening into it which was placed next to the tracks.     The side track passed within a few feet of the seed house.     There was a grade crossing something over four hundred feet north of the house and another a short distance south of it, made by digging down the banks.     The only way wagons loaded with seed for deposit in the house could reach it for unloading was to descend to the tracks at the south crossing, turn up the side track at right angles and proceed, with at least one wheel on the side track, to the seed house door.     This condition of affairs had existed for a considerable time.     In unloading cottonseed from wagons into the seed house appreciable quantities had been wasted and were permitted to remain on the company's tracks.     Many cattle were permitted habitually to wander at large in the vicinity, and they were enticed upon the tracks by the wasted seed, which cows eat with relish.     A number of cows had been killed by the cars of the company in front of the seed house and near it before the time of the accident in question.     There was a curve in the road a short distance south of the place which prevented the engineer of a train from seeing cattle on the track in time to prevent striking them when running at a high rate of speed, and the schedules of the company required the train, on which the plaintiff's son was an employe, to run rapidly in passing there.     On the occasion in question the north-bound train, on which plaintiff's son was the fireman, was running as required by the schedules; it reached Hudsonville about 7 o'clock in the evening, after dark.     There was a cow on the track near the seed house which the engineer and fireman did not observe in time to prevent the locomotive striking it; it was run over, the engine overturned and the fireman,

plaintiff's son, killed. The son, who was twenty-one years of age, contributed largely to his mother's support.

*J. M. Dickinson* and *Mayes & Harris*, for appellant.

Conceding for the sake of argument, merely, that the company was negligent in regard to the cottonseed house and strewing cottonseed on the track, yet, under repeated decisions of this court, there could be no recovery, because the record fails to show a causal connection between this negligence and the accident. It was not the proximate cause.

To say that the cow was going to the cottonseed on the track, or was attracted to the track by the cottonseed, in the very nature of things, must be the merest conjecture.

We might go so far as to say, probably she was going to the cottonseed house, but the case cannot be decided on mere probabilities. She might have been going to the gin. There was the same attraction there. You have to conjecture that she was going for cottonseed at a particular place. Cottonseed are not the only things that attract cattle on the railroad track.

The law does not allow a jury to indulge in this kind of speculation. It is too well settled for argument, that the causal connection must exist. It should have been shown that the cow was there for the cottonseed.

In the case of *Woolley* v. *Illinois, etc., R. R. Co.*, 77 Miss., 927, this court has said, "mere conjecture will not support a judgment in any case." *Owen* v. *Illinois, etc., R. R. Co.*, 77 Miss., 142; *Illinois, etc., R. R. Co.* v. *Cathey*, 70 Miss., 332.

There must be a causal connection between the negligence and the injury, and there is no causal connection shown in this case, between having the cottonseed house constructed as it was, and running over a cow fifty yards from there, which happened to be on the right of way and jumped in front of a rapidly moving train. *Howell* v. *Illinois etc., R. R. Co.*, 75 Miss., 242; *Vicksburg, etc., R. R. Co.* v. *Hart*, 61 Miss., 468; *Chicago, etc., R. R. Co.* v. *Trotter*, 61 Miss., 417.

If the cow had been struck at the cottonseed house, the plaintiff would not be entitled to recover on that ground alone.

The facts show, as we have above set forth, that there was nothing peculiar about this cottonseed house in regard to the attracting cattle. It is shown that there was an exceptionally large number of cattle in this particular vicinity, but the proof is undisputed that conditions existing at this place in regard to cattle, were not different from those anywhere else along the line, considering the number of cattle in the vicinity and the proof as to cattle struck near the seed house.

It is notorious that in this state these cottonseed houses exist at every station on the line of a railroad. Cottonseeds have in recent years grown to be a most important article of commerce and source of wealth to our people. For the convenience of shippers, cottonseed houses are established at the various stations along the line of the road, where they can be stored until they can be loaded into the cars in bulk, and thus shipped to market, giving to the farmer the best facilities for getting the best prices for his product. During certain seasons of the year this is one of the most important parts of railroad traffic. That cottonseed have to be loaded from these houses into the cars, and from wagons into the houses, are necessary features of the business.

That cottonseed will be strewn about these houses, near the railroad track, necessarily follows, but they will be scattered, more or less, by any other mode of loading, as shown by the testimony. That these are likely to attract cattle, just as grass on the right of way will and does attract live stock, is generally known. In fact, live stock is liable to be encountered on the right of way at all times and at all places. Therefore, when an employe takes service with a railroad company, in connection with the running of trains, the fact that cattle will be likely to stray upon the track, or be attracted there by cottonseed, by grass, by numerous other things which we might enumerate, must be taken as one of the risks of the employment.

The company cannot, of course, erect dangerous obstructions upon the track, nor do those unnecessary and negligent acts which would render the track specially dangerous. But if, in the conduct of a legitimate business, straying cattle are likely to be attracted to the railroad track, as in the case of transportation of cottonseed, this must be taken as one of the risks of the employment. This business is general. Its peculiarities and characteristics are notorious, and it cannot be held that a railroad company is guilty of negligence to an employe because it conducts its business in this manner, and because cattle or stray live stock are likely to be attracted to the track thereby. It might as well be said that the railroad company should keep grass from its right of way, and that it should protect its track from straying live stock for the benefit of employes. It has been expressly held, in well considered cases, that the likelihood of cattle straying on the track anywhere is one of the risks of the employment. *Patton* v. *Central Iowa Ry. Co.*, 73 Iowa, 306; *Sweeney* v. *Central Pacific Ry. Co.*, 57 Cal., 15; *Fleming* v *St. Paul, etc., R. R. Co.*, 27 Minn., 111; *Magee* v. *Railroad Co.*, 78 Cal., 430; *Carper* v. *Receivers, etc.*, 7 Am. & Eng. R. R. Cases, 75; 3 Elliott on Railroads, secs. 1192, 1270.

Railroad companies are not required by law in Mississippi to fence their tracks. That stock running at large stray upon tracks at all places along the line, is well known. That in this state the railroad companies handle large quantities of cottonseed, is well known to every employe; that cattle are likely to be attracted about the right of way by cottonseed, as by grass, is also well known, and it must be held that collisions with cattle is a risk which is assumed by any employe, and especially a fireman on a locomotive engine. 3 Elliott on Railroads, secs. 1272, 1289, 1290, 1302.

If the track be reasonably safe, nothing more is required of the railroad company. *Woolley* v. *Illinois, etc., R. R. Co.*, 77 Miss., 927.

*Brewer & Wilson*, for appellee.

The railroad company was aware of the seed being on the track, and that it was attracting cattle to the place. Frequently its employes had to stop and run the cattle off the track before they could pass with a push car. The section boss in charge of the track at the place knew that several cows had been killed at or near the seed house.

Glover, who was employed by defendant to attend the lighting of its switches at Hudsonville, passed this place daily, and sometimes several times a day, and knew that the seed were on the track, and was aware that the cattle were being attracted by them onto the track, and was, further, aware that this condition of affairs had existed for more than a month, just prior to the injury; yet no steps were taken to have the seed removed or to prevent an accident at the place.

The defendant's wrecking train, while there cleaning up the wreck and repairing defendant's track, torn up by the accident, ran over and killed a hog immediately in front of the seed house that was attracted onto the track by the seed and was eating them at the time, on the day of the wreck.

The cow that was killed, that produced the wreck, was driven off of the track and away from the seed at this place not more than two hours before the wreck; yet no steps were taken to prevent her return, and the seed were left there on the ground, making it morally certain that the cow would return, just as she did, and wreck the first passing train after dark, which she did. In the language of the supreme court of Arkansas, in *Jones* v. *Nichols*, 46 Ark., 209, defendant "not only set a stock trap, but they baited it for the game."

No one would seriously contend that, if the defendant's section boss had built a pen, 200 yards long and 100 feet wide, up and down the railroad track, and drove in and fenced up fifty head of cattle or stock on the right of way, that such acts would not have been negligence, and that the natural and probable consequence of such conduct would not have been to en-

danger the lives of employes and passengers on passing trains. What is the difference between building a pen on the track and driving the cattle into it, where they will obstruct passing trains, and building a pen and enticing or tolling the cattle into it by leaving cottonseed scattered there in unnecessary and in undue quantities?

In the case of *Townsend* v. *Wathen*, 9 East, 277–279, Lord Ellenborough, chief justice, says: "What difference is there, in reason, between driving the animal into the trap by means of his instinct, which he cannot resist, and putting him there by manual force?" This language is quoted and approved by Justice Harlan in *Union Pac. R. R. Co.* v. *McDonald*, 152 U. S., 262, and is also approved by Mr. Thompson in his work on negligence, vol. 1, pp. 304, 305. The defendant was charged with the knowledge that cottonseed would attract cattle, and with knowing their habits and instincts. *Spengler* v. *Williams*, 67 Miss., 1.

It is the duty of railroad companies to use reasonable care to furnish their employes a safe place in which to work, and to leave anything on the track, or on the right of way near it, that endangers the lives of employes or passengers aboard passing trains, is negligence. *C. & N. R. R. Co.* v. *Sweet*, 45 Ill., 197, s. c. 92 Am. Dec., 211; 1 Rapalje & Mack's Dig. of Ry. Law, 102, sec. 40; *Chicago, etc., R. R. Co.* v. *Ara*, 52 Ill., 296; *Crafton* v. *H. & S. J. Ry. Co.*, 55 Mo., 580; *Burger* v. *St. Louis, etc., Ry. Co.*, 52 Mo. App., 121; *Brown* v. *Hannibal, etc., Ry. Co.*, 27 Mo. App., 398; *Jones* v. *Nichols*, 46 Ark., 209; Thornton on Railroad Fences and Private Crossings, 515, sec. 321; *Little Rock, etc., R. R. Co.* v. *Dick*, 52 Ark., 402; *Schooling* v. *St. Louis, etc., R. R. Co.*, 87 Mo., 513; *Page* v. *N. Y. C. Ry. Co.*, 71 N. C., 222; *Denver, etc., R. R. Co.* v. *Wilson*, 12 Col., 30; *Bean* v. *W. N. C. R. Co.*, 107 N. C., 731; *Dickson* v. *O. & St. L. R. R. Co.*, 124 Mo., 140; second citation 46 Am. St. Rep., 429, and note; *Donaghan* v. *Erhardt*, 7 L. R. A., 527.

The only authority we know of that holds the contrary is the case of *Sanglois* v. *Buffalo R. R. Co.*, 19 Barb., 364, and this case has been overruled by the highest court of the same state, and since that time there are many decisions from New York holding the same view we now contend for. See 13 N. Y., 32; 32 Keyes, 162; 3 Keyes, 196; 34 N. Y., 404; 35 N. Y., 641; 61 N. Y., 353; 81 N. Y., 190; 46 Hun., 386; Dickson case, 46 Am. St. Rep., 429; *A., T. & S. F. Ry. Co.* v. *Reeman*, (8th circuit) 23 L. R. A., 1768; note to 36 Am. St. Rep., 857; *Railroad Co.* v. *Williams*, 172 Ill., 379, s.c. 64 Am. St. Rep., 44; *Donaghan* v. *Erhardt*, 7 L. R. A., 527; *Sullivan* v. *Railroad Co.*, 72 Am. Dec., 700; *Fordyce* v. *Jackson*, 56 Ark., 594; *Railroad Co.* v. *Stout*, 17 Wallace, 663.

Argued orally by *J. B. Harris*, for appellant, and *Earl Brewer*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court.

The appellant was clearly negligent in constructing this cottonseed house in the manner in which the evidence shows it was constructed. It was the duty of the appellant, in constructing such houses, to do so with proper care and skill, in view of their use, and of the known instincts and appetites of cows and other animals for cottonseed. It is certainly easy to properly construct them, and the testimony is clear that this one is unique in the elements of misconstruction. It is plain, also, that this negligence of the company, and the kindred negligence of leaving large quantities of cottonseed lying on the railroad track, thus inviting animals addicted to the eating of them to go on the track in front of the cottonseed house to get them, are the proximate causes of the injury. The authorities in support of these views are admirably collated in the brief of counsel for appellee, to which we refer.

*Affirmed.*